UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERLIN FRANCHISOR SPV, LLC, )
a Delaware limited liability company, )
)
    Plaintiff, )
)
v. ) No. 1:19-cv-05980
)
BTW AUTO, INC., an Illinois corporation, )
and THOMAS A. WALASZEK, an )
Illinois resident, )
)
    Defendants. )

## ANSWER TO COMPLAINT

BTW Auto, Inc. ("BTW") and Thomas A. Walaszek ("Walaszek"), by and through their counsel Elizabeth R. Bacon Ehlers of Brooks, Tarulis & Tibble, LLC, hereby answers the Complaint as follows:

    1.    This action arises from Defendants' continuing refusal to comply with the terms of the parties' Franchise Agreement, pursuant to which Defendants operated a franchised motor vehicle service center using Plaintiff's proprietary marks and confidential business information. Defendant have repeatedly defaulted on their contractual obligation to pay monthly royalty fees, advertising contributions, and other charges owed to Plaintiff, and have impermissibly ceased operating their business and transferred the assets to a third-party without Merlin's approval. Defendants abandoned their operations, leading to the termination of the Franchise Agreement. To date, however, Defendants have refused to comply with their post-termination obligations under the Franchise Agreement. Plaintiff seeks monetary, injunctive, and other relief for the reasons set forth more fully below.

**ANSWER:**    Defendants admit the Parties had a franchise agreement created by way of an assignment of the Franchise Agreement to Defendants by a former franchisee (the "Assignment"). Defendants deny the remaining allegations and legal conclusions contained in this paragraph.

1

# THE PARTIES

2.      Plaintiff Merlin Franchisor SPV, LLC ("Merlin"), successor-in-interest to SBA-TLC, LLC ("SBA") and Merlin's Franchising, Inc. ("MFI"), is a Delaware limited liability company with its principal place of business located at 440 South Church Street, Charlotte, North Carolina.  Merlin is engaged in the business of franchising independent businesspersons to operate motor vehicle service shops that specialize in vehicle longevity; preventive maintenance; the repair and replacement of brake systems and components, mufflers and exhaust systems, ride control components, and tires; and other automotive services.  Merlin's franchisees are licensed to use Merlin's trade names, trademarks, service marks, and other commercial symbols and to operate under the Merlin business system, which involves the merchandising and sale of automotive services utilizing specially designed retail spaces with special equipment; equipment layouts; identification schemes; methods; specifications; standards; operating procedures; advertising; proprietary materials; and information.  The franchises granted by Merlin are known as "Merlin 200,000 Miles Shops."

**ANSWER:**   Defendants admit the allegations contained in this paragraph.

3.      The sole member of Merlin Franchisor SPV, LLC is Driven Systems LLC.  The sole member of Driven Systems LLC is Driven Brands Funding, LLC.  The sole member of Driven Brands Funding, LLC is Driven Funding HoldCo, LLC.  And the sole member of Driven Brands Funding HoldCo, LLC is Driven Brands, Inc.  Driven Brands, Inc. is a corporation organized under the laws of North Carolina with its principal place of business located at 440 South Church Street, Charlotte, North Carolina.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations contained in this paragraph and demand strict proof of same.

4.      Defendant BTW Auto, Inc. ("BTW") is an Illinois corporation with its principal place of business in Lockport, Illinois.  BTW was previously licensed to operate a Merlin 200,000 Miles Shop located at 983 E. 9th Street, Lockport, Illinois 60441 pursuant to a Franchise Agreement dated January 30, 2012 and an Assignment of Franchise Agreement with an effective date of April 30, 2014.

**ANSWER:**   Defendants admit the allegations contained in this paragraph.

5.      Defendant Thomas A. Walaszek is a natural person and a citizen of the state of Illinois.  He personally guaranteed the obligations of BTW pursuant to an Owner's Guaranty executed in connection with the Assignment of Franchise Agreement.

**ANSWER:**   Defendants admit the allegations contained in this paragraph.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**ANSWER:** Defendants admit that the Parties are citizens of different states but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph and demand strict proof of same.

7. This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in this District. In addition, Defendants have entered into contracts pursuant to which they agreed to submit to the jurisdiction of this Court. Specifically, under Section 17(G) of the Franchise Agreements, Defendants irrevocably submitted to the jurisdiction of this Court and waived all questions of personal jurisdiction and venue.

**ANSWER:** Defendants deny that the Parties are governed by more than one franchise agreement. This denial is a continuing denial incorporated into each paragraph *infra* citing back to Paragraph 7's reference to multiple franchise agreements. Defendants admit that this Court has personal jurisdiction over Defendants pursuant to the Assignment and deny the remaining allegations and legal conclusions contained in this paragraph.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to Merlin's claims occurred here.

**ANSWER:** Defendants admit the allegations of this paragraph.

## BACKGROUND FACTS

### Rights and Obligations Under the Franchise Agreement

9. Merlin is, and at all times relevant to this action, was the franchisor of Merlin 200,000 Miles Shops.

**ANSWER:** Defendant admits the allegations of this paragraph.

10. Defendants agreed to operate the shop for a term of 20 years from the date the lease for the franchised premises becomes effective, or the length of the lease for the franchised premises, including renewal options. (*Id.*)

3

**ANSWER:** Defendants deny that the documents cited in this paragraph (Section 17(G) of unidentified multiple franchise agreements) support the allegations of this paragraph in any manner. Defendants admit that they accepted the Assignment but deny the remaining allegations and legal conclusions contained in this paragraph.

11. The lease, with renewal options, expires after the twenty-year term of the Franchise Agreement.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding the referenced but unidentified "lease" and demand strict proof of same. Defendants deny the remaining legal conclusions contained in this paragraph.

12. Defendants acknowledged that Merlin would disclose confidential and proprietary information and trade secrets to them during the course of the franchise relationship, including manuals pertaining to the operation of the shop. (*Id.* §8.) Defendants agreed that they would maintain the absolute secrecy and confidentiality of that information during and after the term of the Franchise Agreement. (*Id.*) Defendants acknowledged that the use or duplication of Merlin's confidential information in any other business would constitute an unfair method of competition with Merlin and with other Merlin 200,000 Miles Shop franchises. (*Id.*)

**ANSWER:** Defendants admit that Section 8 of the Franchise Agreement ("Confidential Information") governs the Parties rights and obligations regarding confidential information exchanged between them and state further that the terms of Section 8 speak for themselves. Defendants deny the remaining legal conclusions contained in this paragraph.

13. In exchange for the right to use Merlin's trademarks and to participate in the Merlin Franchise system, Defendants agreed to pay to Merlin a monthly royalty fee at the rate of 6.9% of the net revenues of the shop. (*Id.* § 2(B).)

**ANSWER:** Defendants admit that pursuant to the Assignment, they agreed to pay Merlin royalty fees as specified therein based on the revenues of the shop.

14. Defendants also agreed to pay to Merlin, as a contribution to the marketing fund maintained by the company, a monthly advertising fee at the rate of 5.0% of the net revenues of the shop. (*Id.* § 2(C).)

**ANSWER:** Defendants admit that pursuant to the Assignment, they agreed to pay Merlin monthly advertising fees as specified therein based on the revenues of the shop. Defendants lack information sufficient to form a belief about the truth of the allegations contained in this paragraph and demand strict proof of same.

15. The royalty and advertising fees were due to Merlin by the tenth day of each month for the previous month's revenues. (*Id.* §§ 2(B), 2(C).)

**ANSWER:** Defendants admit that Sections 2(B) and 2(C) specify that royalty fees (if any) and advertising fees (if any) were payable on the tenth of each month based upon the previous months revenues (if any). Defendants deny the remaining allegations and legal conclusions contained in this paragraph.

16. Defendants further agreed to pay interest to Merlin on any overdue amount at a rate of 21.0% per annum or the maximum rate permitted by law, whichever is less. (*Id.* § 2(E).)

**ANSWER:** Defendants admit that Section 2(E) ("Service Charges") specifies *inter alia* that certain amounts owed to the Company" (if any) were subject to service charges "after the due date." Defendants deny the remaining allegations and legal conclusions contained in this paragraph.

17. Merlin's primary source of revenue from the operation of its franchise system is derived from the payment of royalty fees by its franchisees. Likewise, a significant portion of Merlin's advertising budget on behalf of its franchisees is derived from the advertising contributions remitted to Merlin by its franchisees.

**ANSWER:** Defendants lack information sufficient to form a belief about the truth of the allegations contained in this paragraph and demand strict proof of same.

18. Defendants agreed that any attempt to terminate the Franchise Agreement early, other than for a material breach by Merlin that was not cured after written notice by Defendants, would constitute a material breach of the Franchise Agreement by Defendants. (*Id.* § 14(A).)

**ANSWER:** Defendants admit that Section 14(A) ("Termination of the Franchise by Franchisee") specifies certain circumstances under which a franchisee could terminate the Franchise Agreement. Defendants deny that they were subject to such limitations by virtue of the Assignment and deny the remaining legal conclusions contained in this paragraph.

19. Defendants further agreed that it would be a default giving Merlin the right to terminate the Franchise Agreement with no opportunity to cure, upon receipt of written notice, to abandon, surrender, or transfer control of the operation of the shop without Merlin's prior approval. (*Id.* § 14(B)(2).)

**ANSWER:** Defendants admit that Section 14(B) ("Termination of the Franchise by the Company") specifies certain circumstances under which the Company could terminate the Franchise Agreement. Defendants deny the remaining legal conclusions contained in this paragraph.

20. Defendant Walaszek personally guaranteed all of BTW's obligation under the Franchise Agreement pursuant to an executed guaranty.

**ANSWER:** Defendants admit that Defendant Walaszek executed a two-page "Owner's Guaranty" dated January 30, 2012. Defendants deny the remaining legal conclusions contained in this paragraph.

### Post-Termination Obligations

21. Defendants agreed that upon termination or expiration of the Franchise Agreement, they would pay all sums due to Merlin within fifteen (15) days after the effective date of the termination or expiration of the Franchise Agreement. (*Id.* § 15(A).)

**ANSWER:** Defendants admit that Section 15(A) ("Payment of Amounts Owed to the Company and Merlin") addresses the repayment of certain amounts by the Franchisee to the Company. Defendants deny the remaining allegations and legal conclusions contained in this paragraph.

22. Defendants agreed that they would immediately cease to use and return to Merlin all manuals and other confidential information of Merlin. (*Id.* § 15(B).)

**ANSWER:** Defendants admit that Section 15(B) ("Return of Manuals, Sales Records, [sic] and Customer Data") addresses the return of these materials by the Franchisee to the Company. Defendants deny the remaining allegations and legal conclusions contained in this paragraph.

23. Defendants agreed that they would take all steps necessary to transfer and assign to Merlin any telephone number used in the operation of the shop. (*Id.* § 15(C).)

**ANSWER:** Defendants admit that Section 15(C) ("Cancellation of Assumed Names/Transfer of Phone Numbers") addresses, *inter alia*, the cancellation of assumed names and transfer procedures for phones numbers by the Franchisee. Defendants deny the remaining allegations and legal conclusions contained in this paragraph.

24. Defendants agreed that, after the termination or expiration of the Franchise Agreement, they would not directly or indirectly identify themselves or any other business as a current or former Merlin Shop or franchise, or use in any manner or for any purpose any of Merlin's proprietary marks or other indicia. (*Id.* § 12(A).)

**ANSWER:** Defendants admit that Section 12(A) ("Marks—Ownership of Marks") addresses, *inter alia*, the ownership and use of Marks pursuant to the Assignment. Defendants deny the remaining allegations and legal conclusions contained in this paragraph.

25. Defendants agreed that in the event Merlin obtained injunctive relief against them, Defendants would pay to Merlin all damages, costs, expenses, and attorneys' fees incurred in obtaining such relief. (*Id.* §17(A).) And, pursuant to the Guaranty, Defendant Walaszek agreed to reimburse Merlin for attorneys' fees and costs incurred in enforcing it.

**ANSWER:** Defendants admit that Section 17(A) ("Enforcement—Judicial Enforcement, Injunction and Specific Enforcement") addresses, *inter alia*, certain enforcement issues pursuant to the Assignment. Defendants deny the remaining legal conclusions contained in this paragraph.

26. Defendants agreed that in the event they failed to pay royalty fees or advertising contributions to Merlin when due, they would pay to Merlin a penalty of $100 per day from the date performance was due until the default was cured. (*Id.* § 22(B).)

**ANSWER:** Defendants admit that Section 22(B) ("Franchisee's Defaults for Which Monetary Damages are Imposed—Failure to Pay Royalty Fees or Marketing Fund Contributions") addresses, *inter alia*, the imposition of certain monetary damages in the event a franchisee fails to pay royalty fees or marketing fund contributions pursuant to the Assignment. Defendants deny the remaining legal conclusions contained in this paragraph.

## DEFENDANTS' DEFAULTS

27. As set forth above, under the Franchise Agreement, Defendants agreed that they would pay on a timely basis a royalty fee of 6.9% and an advertising contribution of 5.0%, as well as interest on unpaid monies due.

**ANSWER:** Defendants incorporate by refer to their answer to paragraphs 13 and 14 above as their answer to this paragraph.

28. Defendants have repeatedly and continually failed to pay required fees for their shop.

**ANSWER:** Defendants deny the allegations and legal conclusions contained in this paragraph.

29. On or about March 7, 2019, Merlin sent Defendants a Notice of Default, advising them that they were in default of the Franchise Agreement for failing to remit monies due, and attaching an account statement showing the outstanding amounts owed. At the time Merlin sent the Notice of Default, Defendants owed a total of $55,764.49 in royalty fees and advertising contributions, not including any interest due under the Franchise Agreement. Merlin provided Defendants with thirty (30) days in which to cure the defaults. The Notice of Default further advised Defendants that their franchise rights would be subject to termination if they failed to timely cure the defaults by submitting the required fees.

**ANSWER:** Defendants admit that Merlin sent them a notice of default on or about March 7, 2019 and state affirmatively that such document speaks for itself. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in

8

this paragraph and demand strict proof of same. Defendants deny the remaining legal conclusions contained in this paragraph.

30. Defendants failed to cure the defaults within the time provided in the Notice of Default.

**ANSWER:** Defendants admit that the "defaults" identified by Merlin have not yet been cured but deny the allegations of this paragraph to the extent it alleges that said failure to resolve the disputes between the Parties were attributable solely to Defendants.

31. Instead, on April 1, 2019, Defendants sent a letter to Merlin informing it that they decided to cease operations and sell their business assets to an independent third party.

**ANSWER:** Defendants admit sending a letter to Merlin on or about April 1, 2019 offering Merlin right of first refusal and notifying Merlin that if it did not respond within thirty (30) days they would be forced to cease operations as a franchise and liquidate their assets. Defendants deny the remaining allegations contained in this paragraph.

32. In response, Merlin sent Defendants a letter on April 8, 2019 demanding that they comply with the terms of their Franchise Agreement. Specifically, Merlin advised Defendants that closing their shop prior to the expiration date of their Franchise Agreement would be a breach that would cause significant damages to Merlin, and demanded that they continue normal business operations until the expiration date of the Franchise Agreement or until they obtained Merlin's consent to sell or transfer the shop to an approved purchaser.

**ANSWER:** Defendants admit Merlin sent a letter on or about April 8, 2019 and state that said letter speaks for itself. Defendants deny the remaining allegations contained in this paragraph.

33. The parties continued to exchange correspondence regarding Defendants' closure of the shop and their monetary defaults. In an email dated May 14, 2019, Merlin informed Defendant that the cure period for the March 7, 2019 Notice of Default had expired on April 8, 2019, that their past due balance had continued to grow to $151,692.75, and that ceasing to operate the shop prior to the expiration of the Franchise Agreement would constitute an early and wrongful termination. Merlin made clear that it would enforce its rights should Defendants not comply with their contractual obligations.

**ANSWER:** Defendants admit that the parties continued to exchange correspondence regarding Defendants' closure of the shop and the alleged monetary defaults. Defendants lack

knowledge or information sufficient to form a belief about the truth of the remaining allegations, and in particular the allegation that "their past due balance had continued to grow to $151,692.75," as Merlin has failed and refused to provide Defendants with a proper accounting of the monies due, owing and paid between the parties, and demand strict proof of same. Defendants deny the remaining legal conclusions contained in this paragraph.

    34.  On June 3, 2019, Defendants sent an email to Merlin informing it that they had sold the business. Defendants also indicated that they would make arrangements for payment, but to date, Defendants have failed to pay the monies owed.

**ANSWER:** Defendants admit the allegations of this paragraph as a partial statement of the content of the June 3, 2019 email to Merlin as to the sale of the business pursuant to notice sent 60 days previously. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations, and in particular the allegation that "Defendants have failed to pay the monies owed" as Merlin has failed and refused to provide Defendants with a proper accounting of the monies due, owing and paid between the parties, and demand strict proof of same. Defendants deny the remaining legal conclusions contained in this paragraph.

    35.  Based on the foregoing, including Defendants' abandonment of the franchised business, Merlin sent Defendants a Notice of Termination dated August 28, 2019, which terminated the Franchise Agreement effective one business day after the date of the Notice and demanded compliance with the post-termination obligations set forth in the Franchise Agreement.

**ANSWER:** Defendants admit Merlin sent them a Notice of Termination dated August 28, 2019 and state that said notice speaks for itself. Defendants deny the remaining legal conclusions contained in this paragraph.

    36.  Defendants have refused to comply with their post-termination obligations. They have failed to pay approximately $150,000 in fees and royalties owed to Merlin and failed to assign to Merlin the telephone number, and remove the on-hold Merlin message, used in their formerly franchised Merlin shop.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph regarding the failure "to pay approximately $150,000 in fees and royalties" as Merlin has failed and refused to provide Defendants with a proper accounting of the monies due, owing and paid between the parties, and demand strict proof of same. Defendants deny the remaining legal conclusions contained in this paragraph. Defendants deny the remaining allegations and legal conclusions contained in this paragraph.

37. Defendants have also failed to return proprietary and confidential information, such as the manuals, bay banners, forms, and posters used in their formerly franchised Merlin shop, as required, and failed to remove Merlin's intellectual property and trademarks from the property.

**ANSWER:** Defendants deny the allegations contained in this paragraph.

38. Defendants' actions have caused and continue to cause monetary damage and irreparable harm to Merlin, including harm to its reputation and goodwill that can only be stopped by the issuance of injunctive relief.

**ANSWER:** Defendants deny the allegations and legal conclusions contained in this paragraph.

## COUNT I
## Breach of Contract

39. The allegations of Paragraphs 1 through 38 are hereby incorporated by reference.

**ANSWER:** The answers to the allegations of Paragraphs 1 through 38 are hereby incorporated by reference.

40. The conduct described above constitutes material breaches of the contractual provisions of the Franchise Agreement cited herein.

**ANSWER:** Defendants deny the legal conclusions contained in this paragraph.

41. These breaches constitute good cause for terminating the Franchise Agreement.

**ANSWER:** Defendants deny the legal conclusions contained in this paragraph.

42. As a direct and proximate result of Defendants' actions, Merlin has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

**ANSWER:** Defendants deny the legal conclusions contained in this paragraph.

## REQUEST FOR RELIEF

WHEREFORE, Defendants BTW AUTO, INC. and THOMAS A. WALASZEK pray that this Court dismiss this action, award Defendants their costs, and grant all such further relief it considers warranted and just.

BTW AUTO, INC. and THOMAS A. WALASZEK

By: /s Elizabeth R. Bacon Ehlers
Their counsel of record

Elizabeth R. Bacon Ehlers (6201117)
Brooks, Tarulis & Tibble, LLC
1733 Park St., Suite 100
Naperville, IL 60563
(630) 355-2101
ebacon@napervillelaw.com